All right, this will be the last case before we take a short break. We're going to follow the same procedure, 15 minutes each side. This is also a very interesting case. We may not follow that strictly, but please keep that in mind. We'll proceed with the appellants. Thank you, Your Honor. Robert Kenney on behalf of CBS Outdoor. Thank you also for the opportunity to have this oral argument. We feel that this is a very simple case. Was IDOT's final decision In our minds, it's as simple as that. The Illinois Supreme Court, in a number of different cases, has indicated, starting with Weingart, that administrative agencies have no inherent authority to amend or change the decisions that have been made. In Pierce Hospital, the Illinois Supreme Court has held that agencies cannot re-hear, alter, or modify decisions unless there's something in the act that so provides an outcome. You know, I read those cases to suggest that final means the parties don't have the right to ask for reconsideration. That's the parties don't have that right. I don't read those cases that say that the agency itself cannot revisit its decision. Well, I think what you're dealing with is you've got some agency decisions where there's a sole individual, a sole party, with no other competing interests involved. And if an agency is in mid-process and has a rule or procedure that it wants to modify while it's in midstream, then yes, I think the agency has some discretion to do that. But when the rules are so clear that says the decision is final, and when you go to Section 522.8A, the priority remains until that decision is final. 522.80A is what says we recognize there are other applicants standing in line, and we have to make a line in the sand. We have to move on. Otherwise, we'll have this situation a decision nine months later. How much longer does CBS wait for their permit? A year and a half. And that's really what's underlying your, or maybe it's underlying all those decisions that talk about agencies' decisions being final. A matter of fairness that, you know, a decision has to be end, and then you go on to the next one. It's interesting. In this case, a deal submitted their application. On the application, they say CBS has a sign on this property. From the beginning of the process, there was a recognition that CBS had an interest. And the regulations when you go through them, 522.60L3 and L4, basically direct eye dot what should we do when we have competing decisions. Well, we take the first one, we go through the process, we give a notice of intent to deny. If we have to deny, that's gone. You go to the second. You go to the third. Those rules with regard to priority, wouldn't you say, is the code answer to the standing argument? It blows out the standing argument. Yes. Absolutely. That's exactly what I was going to get to. That's your basis for standing because, in fact, deal acknowledged that CBS had an interest in the decision it was seeking from eye dot. Absolutely. And this is a very competitive business. Here's the question. It's kind of confusing to me. CBS has a billboard, if you use that term, through deal. Deal is that. Yes. And yet the CBS leasing agreement expired in 2009. I mean, first in June and then in September. We dispute that. Okay. Well, anyway, so it seems like this really boils down to a dispute between the landlord and the tenant. And why should I'm sorry, but the application is for a different location. But it's the same landlord. No, our pending application is for an adjacent property. It's for a different landlord. All the same landlord. But you do have it currently on deal property. No, our sign came down. But it was, and that's the one I was referring to. The CBS sign that went up in 81, it was owned by another company, had been there for 28 years on the deal property. If you read the lease, and we point that out in the brief, they needed to give 60-day notice. All they did was say, they kind of figured out, okay, we're going to put somebody new on there. We had to take our sign down off of the deal property because we could not establish that it was properly zoned in 59. IDOT gives us a 30-day notice. We had to take our medicine. We could not approve that in that 30 days. We had to take the sign down. We applied next door. And so deal had an application pending. They were entitled to the priority. The decision was made to deny. Okay, now I understand. Now let me ask you the other question I have. What's the fair resolution here? I mean, what's the remedy? What do we do? We send it back? And yet, what if IDOT says, deal's application was first, even though we already ruled on it, we're still going to maintain that No, they haven't ruled on ours. We're still pending. We're waiting for IDOT. I thought they had denied yours as well. Or they gave you a notice of intent to deny. And we responded. And they gave us a second notice to intent to deny. And we responded, and they've taken no action. So you don't have a final decision in yours, and therefore presumably would have priority over the one that was incorrectly denied. You don't deny that it was incorrectly denied, right? Yes, it was incorrectly denied under the regulations. And if you look at L3 and L4, the priority, you can have a fact pattern where the first applicant applies, and the conditions don't exist for the issuance of that permit. Then IDOT goes to the second permit in line. And it specifically says, if conditions change, then IDOT shall look to the priority application. The priority application is that second application. When you go to L4, 52260L4, it creates two groups. Group A has five applications. Group B has five applications. IDOT runs through all of Group A and denies them. They start through Group B. They get to the middle of Group B, and the conditions change. So what do we do, assuming we resolve everything in your favor? What do we say in our decision that CBS's application has to stand? CBS has a right to put up its billboard. We order the other side to take down their billboard? Or do we just send it back to IDOT and let IDOT sort it all out? Really, aren't you asking us to just say that the grant of the permit to deal was invalid? Your Honor. That's what you're saying, right? I like to judge you. But you're right. That's all you can do. All you can do is find that the administrative rules are valid, and you should find that the rules were not followed. A final decision is final and invalidate the grant to the permit. That permit gets invalidated. IDOT now looks to the next priority application, which is ours. In terms of the fairness, DEAL had many opportunities to make their application right. They had all the time in the world before they filed it to get it right. They got a notice from IDOT to have 30 days, and they didn't do it in that time frame either. What could they do? Well, once they got denied, they were supposed to ask for a rip, and they didn't. Absolutely. Well, you know, not to talk about things, but we're still going to ask them about that. But my question to you is, to get back to the question that Justice Garcia got to about fairness, isn't CBS seizing upon a fortuitous opportunity that really, in all fairness, shouldn't have been presented to them, that this really should have gone to DEAL, that this permit should have gone to DEAL, if it were not for the fact that there was a clerical error in this application? If you start from the perspective that we had assigned, that IDOT said it has to come down because it doesn't have 59 zoning. But let's say you allow that sign to stay up there. It's still DEAL's property. I mean, that's where I was talking about DEAL being the lease. Eventually, if DEAL does not, if they terminate the lease properly, and they terminate our rights, we do not have the right to go there. And DEAL would control whose billboard goes up there? Not necessarily. Unless you get adjacent property, okay. Not if we had filed an application next door before they did. That's why those priority rules exist because it's such a competitive business and it's a 500-foot spacing. There's multiple properties where an assigned company can be. So when you go through those priority rules, you might have three different properties in that group of priority. Well, but to get back to my question, unless maybe I'm not understanding one thing, let's say DEAL, when they submitted their application, they did it right. Because they did it wrong, right? So let's say they did it right. It was north versus south or south versus north. And they did it right. Well, then you're out of luck, right? If they had done it right. North versus south, in my opinion, is not an issue in this case at all. That's a clerical error. And if IDOT wanted to say there's sufficient information, they could have ruled that way. But when you look at the record and you see that DEAL is still submitting items into that file all the way to October, when their 30-day period ended on August 16th, their rights to enhance their file terminated on August 16th. So you think it's enough already. Let's go on to the next guy. By September 21st, when IDOT says this file is closed, DEAL has no existence in IDOT. That particular application, they can file another one and they can regain priority, but they had no existence. There was no permit to issue nine months later. All right. We'll give you time for rebuttal. Thank you. Thank you. We do have two parties on this side, and you've split your time. We'd like to, Your Honor. All right. Go ahead. About halfway down the middle. Good morning. My name is Hal Morris. I'm accompanied by Julie Meyer, and we represent the tongue-twister 31W356 DEAL Investors, which we'll just call DEAL. And that's D-H-I-E-L as opposed to D-E-A-L, which would be also appropriate in this case. Perhaps. That's right. Perhaps. And also the only Department of Transportation is represented by Assistant Attorney General Jan and Fabiano, who will speak separately. The way we thought it was best to divide the argument up is that the Department's authority, what it can or cannot do under its rules, the regulations and the law, the Department and the State would take. Okay. And I would address the standing argument and really factually, as they say, what was going on here. I think what we've done is we've focused a little bit off really what the case is about. The case is really about one thing, and I agree with counsel for the appellant. It's simple. It's whether the particular permit, which is the permit for the property that DEAL owned and DEAL asked for, whether that was properly granted by IDOT. And I think the second question is, can this court say, in contravention to what the trial court said, that the Department's decision was clearly erroneous? I believe not. And if you look at the facts of the case with deference to counsel, I don't think it's quite the way it was set out. Let's address at least one of those points, and that is what we're really dealing with here. Are we dealing with statutory construction and suggesting a de novo review, or are we dealing with an exercise of discretion by the agency that we have to give deference to? I think we're dealing with the exercise of discretion. What if they made a mistake as a matter of law? Here, if they made a mistake as a matter of law, that would be a de novo review. Here, however, by its very nature, the review that they did and the question that's being asked of this court is when you look at the facts of this particular case, what they did, did they, as the courts say, see that there was a fortuitous event that DuPage sent the wrong zoning to them, and then they went to correct it? They were looking at the facts, and then they were applying it to the authority and the power they had that the State will talk about. And I think that's a classical mixed question of law and fact. Well, that's the preliminary, or that's the initial decision. We certainly agree that that was probably a correct decision and exercise of its discretion. But then past that point. Then you get to really what I think we're talking about is the timing of the priority issue. And that's really clearly a factual question here. Why is it a factual question? If you look through, and it's really three parallel tracks that are going on here. There's the deal permit, which is 12-894. That one is filed for in June 26th of 2009. An intent to deny comes out in July. Based primarily not upon the north versus south clerical error we heard about, but the incorrect information that the DuPage zoning technician gave. There's an appropriate response to that, and there's no response back from IDOT, and we then go back to IDOT and say, essentially, what is going on? They then provide us the specific letter that DuPage sent, and we say, that's the problem. It's an error. DuPage corrects that error, and then ultimately they go through the amended and restated application to grant. Next slide. I'm just looking at an outline. I just want to make sure that what you're saying is correct. There is the June application. Yes. There is the July indication that you don't meet the qualifications because of a zoning issue. That's correct. Then there's an August response from you, but doesn't the department in September deny it finally? Before the technician says he's wrong. No. What they do is they deny based upon the wrong information from the technician, and what happened is two letters crossed in the mail to discover that. Their denial letter sent on the 21st? Of September. Of September. And our request to them, what were you based on? And those crossed, and that's when they first provided to us. And then you were correct, later, which is on the 14th of October, the technician says, I'm sorry, I did it wrong. So that's what happens. But next to it. So did the agency, did IDOT ever say, we're going to withdraw our previous decision because it was grounded on incorrect information, and we're going to treat it as if it's still open? That's not until nine months later. That's correct. But in legal effect, yes. Well, and that's my question. Really, it concerns how quickly they did it and whether they had a right to do it nine months later as opposed to upon receipt of your letter showing the incorrect zoning designation. I think perhaps the flippant answer is if we could control always what the state did, we'd be happier, but we don't really get to pick up the dates they work on. But we're not just, I don't mean to be flip. I mean to be, there are rules, and they may have a right to reopen a final decision, but at some point that final decision is going to have finality, and we're not going to just let it go on for nine months, a year and a half, is that okay? Or two years, is that okay? Where do we draw the line? It's a reasonableness. Here, factually, you draw the line when you look at what's happening next to this application. There's a CBS application on September 8th of 2009 for the adjoining property, we'll call it. IDOT, within 10 days, says here's an intent to deny. Under the IDOT rules, that does not become final because they send their denial of that on 10-21 of 2009. However, what CBS does, while that application has not yet been, as the court says, made final, they file a new application for exactly the same location. And that new application reads almost identical. Under the rules of IDOT, to follow what you've said, Your Honor, that application's a nullity because you can't have two pending at the same time. So this application that counsel says we're waiting for a decision on is really a legal nullity. It was filed at a time when IDOT said we still have yours in front of us. Well, but that kind of begs the question, as before the court today, because if that's true, then you just go to the next person, the next person in priority, whoever that is. Well, we're already in line. Well, good. Good for you. We're in line from our first, even if you consider our second application. Well, not if the first is gone. If the first is gone, and you're right that their application is a nullity, then you've got to go to the third entity, whoever that is. But here's my question. You get a denial letter in September based on the provisions of the code that you're familiar with. Why don't you file a written certiorari? Because that's not exactly how it happened. We get the denial letter after we've asked them what's wrong, and they immediately respond, here's what was wrong with the application, and we come back and say, but that's an error, IDOT, vis-à-vis the zoning. And IDOT then allows us to move forward with what's referred to as the 1030. How do they allow you to move forward? In what sense? I know you're communicating with each other, but how do they allow you to move forward within the rules and regulations of IDOT? They do it by their actions. Their actions are they accept. Is there a rule and regulations that says, you know, IDOT actions are good or not? At the expense of taking the state's thunder, I would submit to the court, yes. And it comes from a variety of issues. Number one, they have under their statutory authority the ability to make the rules and regulations or the procedure before that agency. I'd also submit by way of analogy, just as courts do, a forum always has the inherent authority to determine how it's going to handle its procedures in front of it. And that's all it did. We have rules and regulations, too, and we don't make them up as we go along. We say these rules apply and they're published and everybody has to abide by them. But you're suggesting that some sort of ad hoc manner can proceed. No, I'm not suggesting that. That's kind of what the trial judge did, though, in his opinion. Didn't he just say, yeah, these rules are there, but the agency has a right to bend them and to achieve fairness? Yes, but I think when you put that in the context of the charge to that agency, what the judge at the trial level was doing, he was saying that the agency has the right to look at its rules and when it sees and establishes that it has made an error based upon, as the court has said simply, that it was a fortuitous mistake, none of the party's fault, it has the right to be able to go in and say, I want to fix it. It doesn't have a rule to say, we're IDOT and what we're going to do instead is we're going to talk about something in the city of Chicago in terms of zoning. No, of course not. It can't do that. But this is its core mission, what it does in terms of billboard advertising signs, and I think as Judge Preston noted, it had the ability to go as the agency, not the party, and say, we made a mistake there, we need to fix it, and the way we're going to fix it is through the process that we adopted. You know, here's the problem, and I agree with you that maybe that sort of information should be there, but there is that priority rule, and you're saying that the agency, in effect, can point out its mistake and pick a winner or loser here, and they're picking your client. No, because when you look at the facts of priority here, as I pointed out, CBS filed an application before there was a final decision vis-a-vis the original deal application in June of 2009. That one died of its own accord on October 21st of 2009. In an effort to fix it, the deal filed another application, but they shot too soon. They still had an application pending. So I would submit there is no priority problem with CBS because it's a matter of fact. What about that third one? I'm sorry. What about that third possible guy down the line? Nobody filed, so that would simply be, we don't know who that would be. Because I'm still, in terms of your timing, if CBS files once, you said September 8th or 9th? December 8th of 2009. Right, and then they get the letter saying that there's an intended deny on September 18th. That's correct. If they don't do anything at all, doesn't it just automatically expire in 30 days? It does. So when they file a new one on October 19th, wouldn't they have a right to file the one on October 19th because they have nothing pending and you have got a denial from September? I don't believe so because actually that would have been the day that it would have expired on the 19th and they filed the same day, so they overlapped. Now, are we talking about timing that's very close? Yes, we are. But it nonetheless is what it is. So let me get this right. You want to strictly apply the rules as to CBS, but you want the agency to have that flexibility to bend its rules, as Justice Palmer pointed out, to reach what may be described as the fair result. No, I don't think it's that simple, and here's why. We're going to have to wrap this up very soon. Very quickly. Why I don't think it's that simple is when you look at the argument for deal and what I did with deal, that was based upon nothing that deal did wrong. It was based upon a third party's information that the agency then recognized. But stuff happens. Mistakes happen. That's just the way life goes. But that's different, and that's kind of like the last case we got the opportunity to sit in front of. The parties decided that we're going to allocate risk in a sense, and here CBS did it itself. It wasn't a third party saying, CBS, I'm not going to deliver it until tomorrow. They chose to do that. So I think it's fundamentally different, and I think that's what this case is about and what Judge Preston recognized. It's the fundamental fairness of the application and what occurred. I just want to make sure I have this timing thing down. Yes. The denial letter comes out on September 21st. It's your position that under the rules that they can't file their application. They filed their application on October 19th. Yes. You say that they can't file it on October 19th. When can they file it? They could have filed it the next day. The next day. Yes. On this timeline that we've got, CBS actually does two applications at a time when it doesn't show. That's right. They do one September 9th, then they get a denial on the 18th of September. They don't respond to it. They file another one on October. Well, let me ask you this. Okay. But the position you just took is that the October 19th filing is a nullity because it's filed a day early. Right. Then they file again, CBS files again, and when do they file? No, that's their second one. They filed two. There's just two.  To put it in permit numbers, it's 12-899. It's filed by CBS on September 8th, 2009. The intent to deny is September 18th of that year. The actual denial letter comes out on October 21st. Right. And that's the same day they filed the second. Permit 12-907. Yes, correct. Okay. All right, Mr. Kent, thank you. Thank you. Mr. Morris. Thank you. I'm Dana Fabiana. I'm an assistant attorney general here on behalf of the Illinois Department of Transportation. This case presents a unique circumstance. No one disputes that the sign proposed in Diehl's application satisfied statutory criteria for being an authorized sign, and no one disputes that the department initially denied the sign based upon incorrect information it received from a third party, the local zoning authority. Rather, CBS is arguing that the department did not have the authority to correct its initial determination and grant the permit. Aren't there, aren't that, isn't that the point of rules and regulations to tell the agencies how it can go about correcting its mistakes as opposed to doing it without an authorizing rule? Well, there is no rule telling the agency that they cannot do that. Right. There is no rule either way, but generally when there is no rule either way, the question is serious as to whether or not they can do it the way they did it. Well, in the administrative context, whether the agency has the authority to do something does depend upon the statute, but not every power that an agency exercises must be expressly stated in the statute. I mean, it is well established that agencies have both express powers and the implied power to do all that is required. Why should they have this authority in this case? I mean, what's the benefit to anyone other than the parties? You know, why shouldn't we have IDOT follow its rules regardless of the consequences? Because then that's a certainty. I mean, we all know what the rules are. We all follow the rules. Well, here the statute gave the department broad authority to develop rules. But is it final, final? I mean, it was a final order, but the department does have the authority, the implied authority to correct its decision under these circumstances. When you say it was implied authority, was this the first time the agency has ever exercised that implied authority? Or are there cases that say, yeah, here's where they've done it before and they did it right? I don't know of any cases where they have done that before. So when you say implied authority, it's an implied authority first to arise in this case? Yes, but it is implied within the statutory scheme and the regulatory scheme here. In order for them to have been able to satisfy the various requirements of the statute and the regulation, it was necessary for them to correct their mistake in this case. And they could have, you know, had they, as I indicated, had they, you know, sent out the letter, you know, 30 days after the final letter on receipt of counsel's deal letter saying, you know, the zoning was wrong and that's why you reached this conclusion. And IDOT had sent a letter saying, you know, we're withdrawing our final decision, but they never sent anything out. They never did anything. Or IDOT never did anything. Right. What is really bothering me is that you get the notice, and I don't mean you personally, of course, but IDOT gets the notice October the 14th from the zoning person. And they wait nine months to tell DO they have it. At the same time, if CBS is filing this on the right date, on the October the 19th, this is, nobody tells them that they, I mean that, I'm sorry, that they filed another one, or they get a notice of intent to deny a couple or a few days later. No one ever tells them that until this comes out in June of 2010, the deal has it, that they don't have it because you've given it to DO. It sounds, I mean, it seems like there's prejudice to the other party who's trying to get it because you wait so late to make a decision. Well, I don't think this impacts the other party. I mean, in this particular case, had the correct information been presented, the deal would have been entitled to that application. The legislature intended that. Why didn't you all do it sooner? Why didn't you do it when you got the correct information in October? You got it before CBS actually had a request for the adjacent sign on file because their other one had basically lapsed because they hadn't done anything with it. I just don't understand why you waited once you got the notice to do something. Well, I mean, the record doesn't really reflect what was going on, but I think that there were discussions going on between the various individuals involved here for a period of time. But you seem to be suggesting that, you know, the right party got the right result because the mistake had not been made. But mistakes happen, and, you know, we say tough luck. What's more important are the rules and regulations, which everyone is bound to follow, and that's what we do. There are a lot of cases that, you know, get decided one way, and then two or three years later the Supreme Court says, no, we're going to decide those cases a different way. But that doesn't help the person that got the case decided the wrong way the first time. I mean, that's just a fact of life. And so why shouldn't that fact of life apply here? You know, why shouldn't, you know, there's fairness in one way, but fairness embedded in the rules and regulations. And why shouldn't the fairness in those rules and regulations that everyone has to follow dominate or trump the fairness that you're trying to give deal? It seems like the rules that you've drafted are somewhat draconian in the sense that you say, oh, by the way, we're going to issue this denial, and if we issue a denial, there's nothing you can do about it. There's no appeal. Oh, but if we make a mistake, then we can undo it. So you can't come to us and tell us we made a mistake, but we can say that we made a mistake. Well, again, I mean, yes, it does come down to whether or not this whole statutory scheme does provide them with, you know, the implied authority here to have corrected their decision under these circumstances. And because the legislature would have intended that the permit would have been granted had they had the correct information, and because the rules require them to. And it seems to me that maybe you go back and you say, you know, we've got to take another look at these rules. And we've got to change the rules because the rules are what they are. And not only did IDOT read the rules, and not only did DEAL read the rules, but CBS read the rules. And they're waiting in the wings, and they're saying, you know, we have a right to rely on these rules. And now all of a sudden, in the middle of the game, now IDOT wants to change the rules on us, and that's not fair. If you want to change the rules going forward, go ahead and change them. But don't change them on us. How do you answer that argument? Well, the rules, they don't prohibit the department from doing this here. They just, I mean, again, you know, when you take into account all of the requirements that the department was trying to accommodate here, the fact that the regulations required them to issue a permit if the application is correct, and the fact that they must consider applications in the order that they are received. Let me ask you. And then the fact that the statute gives the department very broad power to. But IDOT made the right decision early on. Based on the information it had, it made the right decision. So why shouldn't that decision stand, even though it's mistaken as to its underlying facts? But those, IDOT didn't do anything wrong, given the fact that it received. And so why should IDOT say, you know, why should IDOT be able to change its right decision? But it was information it received from a third party, the local zoning authority. That happens. And so, again, you know, under this scheme, I think the whole statutory scheme here does give the department the implied authority to correct its decision. You know, some of the cases that CBS has been relying on are situations, first, that they don't address the implied authority. I don't know. It seems to me. Is there a case that says that? They don't. Is there a case that says, that talks about this implied authority that you think you have? Because it seems to me all the cases I've seen say that when you make a final decision, it's final. And you can't amend your final decisions. Well, there are decisions that address the extent of an agency's implied authority. You know, the analogy was to court proceedings, I thought. And we all know that if a circuit court makes a decision and ends the case 30 days later, he has no jurisdiction to review that decision. And why shouldn't there be some sort of reasonable time period after which an agency makes a decision? It's final. Period. Well, it would depend on the particular scheme that was involved. It depends on. It's an awfully big door. Well, some statutory schemes are going to have very specific rules and more explicit rules. And in this particular case, the statute has given the department all of the authority to implement its provisions. And the department has enacted a very simplified proceeding here. And when you consider the fact that the only fair way to have resolved this and to have addressed all of the various requirements under the Act, that they had the authority to do that here. I don't know. I think CBS is going to get up in a couple of minutes and say that's not necessarily fair because you had us on the hook for nine months. We made other business decisions because we thought now deal was out of the picture. And we were in priority. And if you look at the code scheme, the code scheme kind of says once there's a final decision, you have to go to the next entity in priority. So it doesn't say, well, once there's a final decision, you have to go to the next entity in priority, unless, of course, you decide to revisit your decision. It doesn't say that. It says final decision, go to the next one. So I don't see where the room to wiggle is in there. I would say that under the unique circumstances present here, that the department would have the authority to correct their mistakes. So when you say unique circumstances, you're advising us do not publish this as an opinion? Let me ask you this. Let me ask you this. What is our standard of review here? Because, you know, Judge Preston sits in chancery, well-respected judge, and certainly he was looking to see what was the equitable outcome in this case. Do we have deference or not? It sounds like a question of law. Whether an agency does have authority is a question of law, but then the agency is an informed source for determining whether or not it had the authority within a statute that it's familiar with administering. All right. Thank you very much. Mr. Kenney, briefly. I feel compelled to respond to some of the factual issues. I apologize. I will give you four minutes. Justice Lampkin has the facts correct. The second application, which counsel says made our third application illegal, we filed it. We got a 30-day notice of intent to deny. That expired on October 18th. So that is a question of whether he says October 19th, you say 18, 30 days, whether you count the day of receipt or the count. And we filed our next application on October 19th, the following day. But that's irrelevant. We can have multiple applications. That's what the priority rules are all about. Justice Palmer said, okay, if that second one was illegal, you go right past it, you go to the next one. That is correct. That's why the priority rules exist. Well, I was a little bit concerned about that argument because it drags us back into the standing question. If it turns out that it was correct that you go to the next entity in priority, but it just kind of jumped into my head that if they're right and that you didn't have a valid application pending, then you lose your standing in this case. No, because we had two applications. And it's the application we had standing with our original application. We had standing with our second application. We're not denied standing because we had two applications pending. I think the panel is correct. Why didn't they file a writ? That was our remedy. We had to take the music, take the poison. Nothing Diehl did was wrong. Section 522.50A. The applicant shall require the application shall require the applicant to provide specific information. It lists the information, one of which you go to DuPage County, you get your letter, and you bring it. They decided to just, what, call DuPage County and do it for us? They can do that. They did that, and they have to live with the results. Implied authority outcome, Illinois Supreme Court case deal with the exact same section, 522.80A, said that Diehl can challenge the 30-day notice of intent to deny, but that decision is final. I have nothing more that I can tell this panel about finality. I don't know where to go if the regs don't give us priority and final isn't final, but I do believe if the court does uphold this decision, then I think that it will change the law of administrative review when you have competing parties, because that is not the law of Illinois today. We will never publish this, don't worry about it. I think we might, but I should have asked the Attorney General, where is the real harm in just undoing it all and sending it back to IDOT and having them follow the rules and regulations, which is the only request that you really can have, opposite of what I suggested before, right? Well, that is the only relief you can really get. The relief is that we can get is that you look at the rules and the regulations. They weren't followed? That they were not followed, so the issuance of that permit was invalid. Right, so we send it back and let them? Well, you don't send it back to IDOT. There's a finding that that's invalid. Now IDOT goes and says, well, that permit's invalid. Now what do we do? Well, we'll be on the door knocking down their door saying, here's our permit. We've been waiting for a decision for quite some time. Good enough. Thank you. Anything else? All right, thank you very much. As I indicated, the case is very interesting. We're going to take a five-minute break. We'll come back for the last case.